UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____

DAVID SMITH AND PAMELA SMITH,     :
INDIVIDUALLY AND AS PARENTS       :
AND NEXT FRIENDS OF JEREMY SMITH, :    CIVIL ACTION NO.
                                  :    3:03-CV-1829 (WWE)
     Plaintiffs                   :
                                  :
v.                                :
                                  :
GUILFORD BOARD OF EDUCATION,      :
SANDRA M. WHELAN, IN HER OFFICIAL :
CAPACITY AS A MEMBER OF THE       :
GUILFORD BOARD OF EDUCATION,      :
STEPHEN G. RIEBEN, IN HIS OFFICIAL :
CAPACITY AS MEMBER OF THE GUILFORD :
BOARD OF EDUCATION, WILLIAM L.     :
DWYER, IN HIS OFFICIAL CAPACITY AS :
A MEMBER OF THE GUILFORD BOARD OF  :
EDUCATION, KEITH B. BISHOP, IN HIS :
OFFICIAL CAPACITY AS A MEMBER OF   :
THE GUILFORD BOARD OF EDUCATION,   :
RICHARD J. BEATTY, IN HIS OFFICIAL :
CAPACITY AS A MEMBER OF THE        :
GUILFORD BOARD OF EDUCATION,       :
WILLIAM BLOSS, IN HIS OFFICIAL     :
CAPACITY AS A MEMBER OF THE        :
GUILFORD BOARD OF EDUCATION, MARGOT:
K. BURKLE, IN HER OFFICIAL CAPACITY:
AS A MEMBER OF THE GUILFORD BOARD  :
OF EDUCATION, JAMES L. RALLS, IN   :
HIS OFFICIAL CAPACITY AS A MEMBER  :
OF THE GUILFORD BOARD OF EDUCATION,:
KATHLEEN NOLAN, IN HER OFFICIAL    :
CAPACITY AS A MEMBER OF THE        :
GUILFORD BOARD OF EDUCATION,       :
BARBARA L. TRUEX, IN HER OFFICIAL  :
CAPACITY AS GUILFORD SUPERINTENDENT:
OF SCHOOLS, PAMELA GARDNER, IN HER :
OFFICIAL CAPACITY AS AN EMPLOYEE   :
OF THE GUILFORD BOARD OF EDUCATION,:
TAMMY LIZOTTE, IN HER OFFICIAL     :
CAPACITY AS AN EMPLOYEE OF THE     :

1

```
GUILFORD BOARD OF EDUCATION, and   :
LILLIAN PRESTON, IN HER OFFICIAL   :
CAPACITY AS AN EMPLOYEE OF THE     :
GUILFORD BOARD OF EDUCATION,       :
                                   :
          Defendants.              :        NOVEMBER 23, 2005
_____
```

### RULING ON DEFENDANTS' MOTION TO DISMISS ON THE PLEADINGS

This is an action arising out of injuries and damages allegedly suffered by one of the plaintiffs as a result of purported bullying and harassment by the plaintiff's classmates during his freshman year of high school, specifically from September 2001 through January 2002.

The plaintiffs filed a seven-count amended complaint, alleging: (1) violations of 42 U.S.C. section 1983 as to all defendants; (2) violations of 42 U.S.C. section 1985 as to all defendants; (3) violations of 42 U.S.C. section 1986 as to all defendants; (4) violations of the Rehabilitation Act, 42 U.S.C. section 794, and the Americans with Disabilities Act, 42 U.S.C. sections 12102, et seq. as to all defendants; (5) negligence against all defendants for the breach of their duties to protect students from intentional harm and to provide a safe school environment; (6) negligence by Superintendent Truex, the Board and the Board members for the breach of their duty to supervise students and teachers; and (7) a cause of action for reimbursement to plaintiffs David Smith and Pamela Smith for

medical expenses for their child, plaintiff Jeremy Smith, for injuries incurred.  The defendants now move for judgment on the pleadings in their favor on all claims against all defendants on the ground that all claims are barred by the doctrine of governmental immunity.  In the alternative, the defendants move for judgment on all claims on the ground that the plaintiffs have failed to allege that they have exhausted their administrative remedies.  Additionally, the defendants move for judgment on the First, Second, Third and Fourth claims on the ground that they are legally insufficient to state a cause of action upon which relief may be granted.

## I.  BACKGROUND

At all times relevant to this matter, plaintiff Jeremy Smith ("Jeremy") was enrolled as a student and attended Guilford High School.  He was a freshman during the 2001-2002 academic year. The salient events allegedly occurred between September 2001 and January 2002.  During that time, plaintiffs allege, Jeremy was approximately four feet, seven inches (4'7") in height and weighed 75 pounds.  Having been diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"), Jeremy was considered an individual with a disability, as defined in 29 U.S.C. section 705, and a qualified individual with a disability, as provided by 42 U.S.C. section 12131. Accordingly, Jeremy qualified for special education services as an "other health impaired" student

3

pursuant to Conn. Gen. Stat. Section 10-76a and Regs. Conn. State
Agencies section 19-76a-2.  As a result of this classification, a
Planning and Placement Team ("PPT") met to design and implement
an individualized educational program ("IEP") as required under
both federal and state law.

The plaintiffs allege that from at least November 2001
through January 2002, students at Guilford High School
individually and in concert engaged in an ongoing course of
conduct that involved acts and offenses against Jeremy during
school hours and on school property. These acts included, but
were not limited to: (1) pushing and shoving; (2) blocking
Jeremy's entrance into or out of classrooms, restraining and
imprisoning him therein; (3) placing Jeremy on students'
shoulders and physically treating him "like a baby;" (4) teasing,
harassing, bullying and tormenting Jeremy on a daily basis; (5)
forcing Jeremy into a backpack, zipping the pack, then parading
the backpack, with Jeremy visible, through the halls of the
school; (6) mocking Jeremy with sexually suggestive comments; (7)
on at least one occasion, picking him up against his will,
cradling and treating him as if he were a baby; (8) grabbing,
assaulting, restraining, imprisoning, and teasing him with
disparaging or threatening comments.

The plaintiffs allege that the defendants were aware of this
conduct and these events, that they failed to intervene in any

4

way and condoned, permitted or acquiesced to the performance of
these acts.  The plaintiffs assert that the defendants' pattern
of conduct, customs, usages and practices effectively deprived
Jeremy of his constitutional rights of due process and equal
protection and his state right to a free and appropriate public
education.  They also argue that the Superintendent and the Board
failed to train and supervise its employees properly in order to
prevent the occurrence of such acts or to rectify the employees'
lack of intervention of same.

        As a result of the defendants' conduct and their failure to
act, the plaintiffs claim, Jeremy suffered emotional and physical
injuries.  He ultimately withdrew from Guilford High School and
attended high school in another town.  The plaintiffs now claim
damages for the injuries suffered as a result of the defendants'
conduct and their failure to act.  The plaintiffs also claim
reimbursement for medical costs associated with the care for
Jeremy's injuries.

                          II.  DISCUSSION

1.  Standard of Review

        After the pleadings are closed, a party may move for
judgment on the pleadings if no material facts remain at issue
and the parties' dispute can be resolved on both the pleadings
and those facts of which the Court can take judicial notice.
Fed. R. Civ. P. 12(c).  Judgment on the pleadings is appropriate

if, from the pleadings, the moving party is entitled to judgment as a matter of law. Burns International Sec. Serv. v. International Union United Plant Guard Workers of America (UPGWA) and Its Local 537, 47 F.3d 14, 16 (2d Cir. 1995). In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion to dismiss under Rule 12(b)(6).

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). The function of a motion to dismiss "is merely to assess the legal feasability of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980). In considering a motion to dismiss, a court must presume all factual allegations of the complaint to be true and must draw any reasonable inferences in favor of the non-moving party. Cruz v. Beto, 405 U.S. 319, 322 (1972).

With this strict standard in mind, however, judgment on the pleadings is appropriate where it is clear that there is no legal sufficiency to the plaintiffs' claims.

2.   Governmental Immunity

The defendants move to dismiss all claims on the ground that they are government officials and, therefore, are immune from

suit pursuant to the doctrine of governmental immunity. The plaintiffs argue that dismissal at this stage of the proceedings is inappropriate because factual questions regarding the question of immunity remain that cannot be resolved on the pleadings.  The Court agrees with the defendants and finds there are no factual questions that preclude the defendants' governmental immunity.

"Individual public officials are entitled to qualified immunity from claims for monetary damages if the statutory right infringed was not clearly established at the time of the violation or if it was objectively reasonable for officials to believe their acts did not infringe upon those rights."  Taylor v. Vermont Dept. of Education, 313 F.3d 768, 793 (2d Cir. 2003). "In determining whether a right has been clearly established, we consider (1) whether the right in question was defined with reasonable specificity; (2) whether the decisional law of the Supreme Court and the applicable circuit court supported the existence of the right in question; and (3) whether under preexisting law a reasonable defendant would have understood that his or her acts were unlawful."  Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir. 1991).

The plaintiff must present allegations that, if true, could support their claims of constitutional violations. "The initial question in the qualified-immunity inquiry should be whether the complaint sufficiently alleges the violation of a federal right,

for a necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of constitutional right at all." X-MEN Security, Inc. v. Pataki, 196 F.3d 56, 66 (2d Cir. 1999).  If a violation of a constitutional right is not established at this stage of the inquiry, the defendants' right to qualified immunity remains intact.  "The issue of whether the plaintiff has asserted a violation of a constitutional right at all is a purely legal question. If the complaint does not allege a cognizable federal claim, the defendant is entitled to have his qualified immunity motion granted promptly as a matter of law." X-MEN, 196 F.3d at 66.

Here, the plaintiffs claim that Jeremy's rights, privileges and immunities under the fourteenth amendment to the United States Constitution, 42 U.S.C. sections 1983, 1985 and 1986, the Rehabilitation Act (42 U.S.C. section 794) and the Americans with Disabilities Act (42 U.S.C. sections 12101, et seq.) were violated by the defendants' acts or omissions regarding the rampant bullying and other acts and offenses he suffered while a student at Guilford High School from at least November 2001 through January 2002.  They assert that the defendants knew or should have known that both their actions and inaction were

likely to result in these violations of his federal rights, to wit: his rights to due process and to equal protection under the fourteenth amendment; his right to a free, safe and appropriate public education, under the color of federal law, in violation of 42 U.S.C. section 1983; and his right to be free from discrimination on the basis of a disability, pursuant to the Rehabilitation Act and the Americans with Disabilities Act.  The plaintiffs claim that these violations also fall under the constitutional rubrics of 42 U.S.C. section 1985 and 1986.

3.  42 U.S.C. section 1983 claims

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. section 1983.

The plaintiffs claim that as a result of the defendants' conduct, Jeremy suffered the violation of his rights to due process and equal protection. The plaintiffs do not elucidate whether Jeremy suffered a loss of his rights to procedural due process or substantive due process; however, what is significant

at this stage is the deprivation of due process in any

permutation.

> Due process claims may take one of two forms:
> procedural due process or substantive due process.
> Procedural due process claims concern the adequacy of
> the procedures provided by the governmental body for
> the protection of liberty or property rights of an
> individual. Substantive due process claims concern
> limitations on governmental conduct toward an
> individual regardless of the procedural protections.
> Plaintiff does not specify whether she is alleging a
> denial of her substantive or procedural due process
> rights, or both. However, to establish a violation of
> either substantive or procedural due process, plaintiff
> must initially show that she was deprived of a property
> or liberty interest. Thus, our threshold inquiry is
> whether plaintiff had a constitutionally protected
> property or liberty interest. If so, we will then
> consider whether there was a deprivation of that
> interest.

Gordon v. Nicoletti, 84 F.Supp.2d 304, 308-309 (D.Conn. 2000).

Here, the plaintiffs argue that Jeremy was deprived of his

constitutional right to a free appropriate public education

("FAPE").  They claim that the constant harassment and ill

treatment precluded him from receiving his FAPE. Pursuant to the

process articulated in X-MEN Security, Inc. v. Pataki, 196 F.3d

56, 66 (2d Cir. 1999), supra, and Gordon v. Nicoletti, the Court

first considers whether the right to a FAPE is a constitutionally

protected property interest.

The Supreme Court has repeatedly held that the right to an

education is neither explicitly nor implicitly guaranteed in the

Constitution, and as such, cannot be considered "fundamental."

See San Antonio Independent School District v. Rodriguez, 411

U.S. 1, 35-37, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) (rejecting claim that education is a fundamental right, thereby triggering strict scrutiny review under the Equal Protection Clause); Dunbar v. Hamden Bd. Of Educ., 267 F.Supp.2d 178, 181 (D.Conn.2003) (noting that education is not among the rights afforded explicit protection under our federal Constitution).

Furthermore, even if the right to a FAPE was considered constitutional or fundamental, it is evident that Jeremy did not, in fact, experience a denial of this right.  While the plaintiffs claim that Jeremy was "forced to withdraw from Guilford High School" and, therefore, was "deprived of the ability to enjoy the friendships he established with students in Guilford and to continue the activities he had enjoyed while in Guilford," they do not argue that he was ever denied an appropriate public education. He voluntarily withdrew from Guilford High School and there is no claim that he did not receive a free and appropriate public education in his subsequent placement.  A FAPE only requires that the state provide an "appropriate" education; it does not require that it be an "optimal" education. "IEP's [Individualized Education Program, designed in furtherance of the FAPE] are subject to numerous procedural and substantive requirements, but they are not required to furnish every special service necessary to maximize each handicapped child's potential. Rather, the IDEA requires that IEPs provide a basic floor of

opportunity, consisting of services that are individually designed to provide educational benefits to a child with a disability." Grim v. Rhinebeck Central School District, 346 F.3d 377, 379 (2d Cir. 2003). Jeremy was not "placed" in the other school pursuant to an IEP; instead, he voluntarily chose to do so. Significantly, the plaintiffs make no claim that Jeremy's IEP was lacking in any way; the absence of a complaint that Jeremy's placement in another school *continued* to deprive him of a FAPE precludes the Court from a finding of said deprivation. Accordingly, there is not a denial of any constitutionally guaranteed property right and, therefore, Jeremy has not suffered a violation of either his substantive or procedural due process rights.

Assuming, arguendo, that the defendants had violated Jeremy's rights, which they did not, placement in another school system would obviate the complaint. "It has long been held that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of due process if a meaningful post-deprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

4. 42 U.S.C. section 1985, ADA and Rehabilitation Act claims

The plaintiffs additionally allege that the defendants conspired to deprive Jeremy of his civil rights in violation of

12

42 U.S.C. § 1985. To establish a cause of action under 42 U.S.C. section 1985 for conspiracy to violate civil rights, "a plaintiff must demonstrate 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" New York State National Organization for Women v. Terry, 886 F.2d 1339, 1358 (2d Cir.1989). Section 1985 provides, in relevant part:

> If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

"To prevail on a § 1985(3) claim, a plaintiff must prove that defendants (1) engaged in a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons the equal protection of the laws, or the equal privileges and immunities under the laws; (3) acted in furtherance of the conspiracy; and (4) deprived such person or

13

class of persons the exercise of any right or privilege of a
citizen of the United States." <u>New York State Nat. Organization
for Women v. Terry</u>, 886 F.2d at 1358.

The plaintiffs claim that the defendants effectively
discriminated against him because of his disability, thereby
depriving him of equal protection.  The Court disagrees.

It is true, pursuant to the facts as presented in the
complaint, that Jeremy was designated, for the purpose of access
to special education services as delineated by the guidelines
promulgated by the Americans with Disabilities Act ("ADA"), as a
student with a "disability."  The plaintiffs argue, however, that
it is this designation that raises their claims to violations of
federal rights as articulated in the ADA and the Rehabilitation
Act.[1]

Under the ADA, a plaintiff may establish that he has a
disability by demonstrating that he: "(1) has a physical or
mental impairment that substantially limits his major life
activities; (2) has a record of such an impairment; or (3) is
regarded as having such an impairment." <u>Dean v. Westchester
County P.R.C.</u>, 309 F.Supp.2d 587, 593 (S.D.N.Y. 2004).  In order

---

[1]The Second Circuit applies the same analysis to claims
under the ADA as it does to claims that fall under the
Rehabilitation Act. <u>Henrietta D. v. Bloomberg</u>, 331 F.3d 261, 272
(2d Cir. 2003).  See also <u>Colwell v. Suffolk County Police Dept.</u>,
158 F.3d 635, 641 (2d Cir. 1998) ("We also construe the ADA to be
consistent with the regulations issued to implement the
Rehabilitation Act.").

to establish the first element (i.e., whether one has a physical or mental impairment that substantially limits one or more of the major life activities of an individual), there is a three-step inquiry: "(1) determine whether the plaintiff suffered from a physical or mental impairment; (2) identify the life activity upon which the plaintiff relied and determine whether it constitutes a major life activity under the ADA; and (3) determine whether the plaintiff's impairment substantially limited a major life activity identified in step 2."  Colwell v. Suffolk County Police Dept., 158 F.3d at 641.

Although the plaintiffs claim that Jeremy's condition satisfies each element of both tests, it is evident from the record that the disability from which Jeremy suffers and for which he is designated as "disabled" is distinct from the "impairment" to which the ridicule and harassment was directed and that there is no "major life activity" that is or has been substantially limited as a result of the designated impairment. Jeremy was diagnosed as having Attention Deficit Hyperactivity Disorder ("ADHD"); this condition entitled him to the rights and provisions of special education services and accommodations guaranteed under the ADA.  The plaintiffs do not attest that Jeremy was treated in the manner alleged as a result of his ADHD and they also fail to cite a major life activity that was limited by virtue of same.  Instead, the plaintiffs attest that Jeremy's

classmates treated him with such hostility as a result of a completely unrelated condition: his small size and low weight. These factors have no correlation – and the plaintiffs claim none – to the ADHD with which he was diagnosed and by virtue of which he qualified as an "individual with an impairment" for the purposes of the ADA and the Rehabilitation Act.

Furthermore, even if the plaintiffs did claim that Jeremy's stature is a "disability" for the purposes of the ADA and the Rehabilitation Act, their assertion would be groundless.  "It is important to distinguish between conditions that are impairments and physical, psychological, environmental, cultural and economic characteristics that are not impairments.  The definition of the term 'impairment' does not include physical characteristics such as eye color, hair color, left-handedness, or height, weight or muscle tone that are within 'normal' range and are not the result of a physiological disorder."  <u>Francis v. City of Meriden</u>, 129 F.3d 281, 284 (2d Cir. 1997).

5.  42 U.S.C. section 1986 claim

The plaintiffs' final constitutional claim is that the defendants violated their rights as provided by 42 U.S.C. section 1986.  Section 1986 provides that

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to

16

> the party injured, or his legal representatives, for
> all damages caused by such wrongful act, which such
> person by reasonable diligence could have prevented
> ..... But no action under the provisions of this
> section shall be sustained which is not commenced
> within one year after the cause of action has accrued.

42 U.S.C. section 1986.

Since it has already been established that there was no
constitutional violation, the plaintiffs' claims under section
1986 also fail.  Quite simply, there was no constitutional
violation, there was no conspiracy to commit a constitutional
violation and, therefore, there was no amount of prevention the
defendants could have employed.  While it is tragic that Jeremy
Smith suffered repugnant treatment by his peers, such treatment
does not rise to the level of the violations of constitutional
rights.

Furthermore, the plaintiffs' claims under 1986 are time
barred.  As the statute provides, there is a one year statute of
limitations for an action brought pursuant to 1986 ("No action
under the provisions of this section shall be sustained which is
not commenced within one year after the cause of action has
accrued.").  The plaintiffs claim that the acts in question took
place no later than January 2002.  This action was not commenced
until October 2003.  More than a year had passed before the
plaintiffs filed their complaint.  Thus, their claims under 1986
are barred by the applicable one year statute of limitations.

III.   CONCLUSION

For the foregoing reasons, the Court grants judgment on the pleadings [Doc. #39] in favor of the defendants.

The Clerk is instructed to close this case.


SO ORDERED this __29th___ of November, 2005, at Bridgeport, Connecticut.


```
_____/s/_____
Warren W. Eginton
Senior United States District Judge
```

18